United States District Court
Southern District of Texas
**ENTERED**
March 06, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL JEROME CLARK, <br> TDCJ #02022845, <br><br> Petitioner, <br><br> v. <br><br> LORIE DAVIS, Director, <br> Texas Department of Criminal <br> Justice - Correctional <br> Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. H-18-2163 |

## MEMORANDUM OPINION AND ORDER

Michael Jerome Clark has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from a conviction for capital murder that resulted in a sentence of life imprisonment. Pending before the court is Respondent Lorie Davis's Motion for Summary Judgment With Brief in Support ("Respondent's MSJ") (Docket Entry No. 14). Clark has replied with Petitioner's Response to Respondent Davis's Motion for Summary Judgment ("Petitioner's Response") (Docket Entry No. 19). After considering the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and will dismiss this action for the reasons explained below.

## I. **Background**

A Harris County grand jury returned an indictment against Clark in cause number 1366492, charging him with capital murder by intentionally causing the death of Syed Hussain by shooting him with a deadly weapon, namely a firearm, while committing or attempting to commit the robbery of Sujesh Mahajan.[1] The indictment was enhanced with allegations that Clark had two prior felony convictions for aggravated robbery and aggravated assault on a peace officer.[2] A jury in the 177th District Court found Clark guilty as charged in the indictment.[3] Because the State did not seek the death penalty, Clark automatically received a sentence of life imprisonment without the possibility of parole.[4]

On direct appeal Clark argued that the evidence was legally insufficient to establish his identity as the perpetrator or to support his conviction.[5] An intermediate court of appeals rejected that argument after summarizing the evidence presented at trial, as follows:

---

[1] Indictment, Docket Entry No. 15-31, p. 56. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2] Id.

[3] Judgment of Conviction by Jury - Non-Death Capital, Docket Entry No. 15-31, p. 61.

[4] See id.; see also Tex. Penal Code § 12.31(a)(2).

[5] Appellant's Brief, Docket Entry No. 15-7, p. 6.

-2-

According to the State's evidence, during relevant times, complainant Syed Hussain and Sujesh Mahajan were both employed at a gas station in Houston. Occasionally, Mahajan would make the station's bank deposit and carry the money hidden inside a fast-food bag. On June 17, 2011, Mahajan planned to make the deposit, and accompanied by Hussain, went to Mahajan's car parked on the property. While Mahajan was opening his car door, he saw a hand reach from behind in an attempt to grab the bag of money. Mahajan rushed into the driver's seat and closed the door while Hussain was still outside of the vehicle. Mahajan then heard one or two gun shots, but he did not see a shooting or the gunman. Hussain entered the passenger's seat and was bleeding from his stomach. Hussain was transported to the hospital where he died from a gunshot wound to his abdomen.

Byron Smith, who was walking by the station during the shooting, saw a station employee and another man wrestling over a bag. That man fired two shots with a gun, and one shot struck another station employee causing him to bend down. The gunman then placed the gun to that employee's head and pulled the trigger twice, but the gun jammed. The gunman ran away toward a trail alongside a store adjacent to the station. He dropped the gun when he struck a pole but retrieved it and continued running. Smith could not clearly see the gunman's face but generally described him as black, medium-built, slightly under six feet tall, and wearing a white shirt, black shorts, and a black stocking cap[6] with a baseball cap on top of that.

Another witness, John Washington, who lived in a house by the trail, heard a gunshot and looked out his window. He saw a man rounding a corner by the station at issue, heard two more gunshots, and saw the man run away from the station. The man shoved an object down the back of his pants and then continued by Washington's house. After the man crossed the street by Washington's house, the man pulled a two-piece item off his head, and part was a stocking cap which fell to the ground. The man continued running, and Washington lost sight of him. Washington did not see the man's face but described him as black, about 5'10-11", and 150-180 pounds. Washington showed police

---

[6]Witnesses referred to the cap at various times as a "stocking cap," "wave cap," "skull cap" or "doo rag." For consistency, we will refer to it as a "stocking cap."

-3-

officers the stocking cap at the place where it was dropped.

Officers found shell casings from a .380 caliber gun at the scene and recovered the stocking cap. The station's surveillance equipment recorded a man in a white shirt wait about ten minutes in bushes near Mahajan's parked car, immediately approach the employees when they reached the car with Mahajan carrying the bag, struggle with the employees, make a motion toward Hussain resulting in Hussain bending over and grabbing his abdomen, and then run away. But the recording was not sufficiently clear to aid in identifying the perpetrator. The police had difficulty identifying a suspect until over a year after the incident when the results of DNA testing on the stocking cap received a "hit" for appellant in the police database. An officer met with appellant and obtained a buccal swab. That officer testified that appellant generally matched the descriptions given by Smith and Washington as to race, height, and weight. The officer showed a photo array, which included appellant's photo, to Mahajan, Smith, and possibly Washington, but no witness could identify appellant.

A criminalist with the Houston Forensic Science Center swabbed all surfaces on the inside and outside of the stocking cap for materials. A DNA analyst compared the DNA profile from two portions of those materials to the DNA from appellant's buccal swab. The analyst determined that (1) appellant could not be excluded as a contributor to both portions of materials obtained from the stocking cap, and (2) the probability that a randomly chosen unrelated African American contributed the DNA was one in 430 quintillion for one portion of the materials and one in 29 quintillion for the other portion.

Appellant presented testimony from his brother, who stated that in 2011, appellant donated clothes for the homeless at a church several miles from the gas station at issue, although the brother could not identify the items donated. The brother also confirmed that appellant was living with a sibling a few miles from the station at the time of the offense.

Clark v. State, No. 14-15-00840-CR, 2016 WL 4254303, at *1-2 (Tex. App. — Houston [14th Dist.] Aug. 11, 2016) (footnote re-numbered

from original). Subsequently, the Texas Court of Criminal Appeals denied Clark's petition for discretionary review.

Clark challenged his conviction further by filing an Application for a Writ of Habeas Corpus under Article 11.07 of the Texas Code of Criminal Procedure ("State Habeas Application"),[7] asserting that he was actually innocent because the State presented DNA evidence that "had not been fully tested[.]"[8] The state habeas corpus court found that Clark's claim was actionable, if at all, in a post-conviction motion for DNA testing under Chapter 64 of the Texas Code of Criminal Procedure, and not in a habeas corpus proceeding under Article 11.07.[9] The Texas Court of Criminal Appeals agreed and denied relief without a written order.[10] Clark has since filed a post-conviction motion for additional DNA testing under Chapter 64, which remains pending before the trial court.[11]

---

[7]State Habeas Application, Docket Entry No. 15-31, pp. 5-22.

[8]Id. at 10.

[9]State's Proposed Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 15-31, p. 42.

[10]See Action Taken on Writ No. 13,739-05, Docket Entry No. 15-28, p. 1.

[11]See Motion for Judicial Notice, Docket Entry No. 16, pp. 1-3 (advising the court that Clark filed his post-conviction motion for DNA testing with the trial court on October 16, 2018); Letter dated Feb. 9, 2019, Docket Entry No. 20, p. 1 (advising that the state court proceeding remains ongoing). According to public records available from the Harris County District Clerk's Office it appears that the trial court has not yet ruled on that motion, which was filed in Clark's criminal case. See Office of the Harris County District Clerk at https://www.hcdistrictclerk.com (last visited March 4, 2019).

In his Petition for relief under 28 U.S.C. § 2254(d) Clark repeats his claim that the evidence was legally insufficient to support his conviction.[12] The respondent moves for summary judgment, arguing that Clark is not entitled to relief under the governing federal habeas corpus standard of review.[13]

## II. **Standard of Review**

Because the petitioner's claim was adjudicated on the merits during his direct appeal, review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it

---

[12]Petition, Docket Entry No. 1, p. 6.

[13]Respondent's MSJ, Docket Entry No. 14, pp. 8-15.

reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations and internal quotation marks omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)).

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

### III. Discussion

Clark's sole claim for relief is that the evidence is legally insufficient to support his capital murder conviction.[14] His primary argument is that, apart from the DNA evidence, there was insufficient proof that he was the perpetrator because none of the

---

[14]Petition, Docket Entry No. 1, p. 6.

witnesses could positively identify him.[15] The respondent argues that Clark's challenge to the sufficiency of the evidence has no merit under the deferential standard that applies on federal habeas review.[16]

On habeas corpus review of a state court conviction a challenge to the legal sufficiency of the evidence is governed by <u>Jackson v. Virginia</u>, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. <u>See</u> <u>In re Winship</u>, 90 S. Ct. 1068, 1073 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). This standard only requires that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 99 S. Ct. at 2789 (emphasis in original).

The Supreme Court has emphasized "that <u>Jackson</u> claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict <u>Jackson</u> standard was unreasonable. <u>See</u> 28 U.S.C.

---

[15]Petitioner's Memorandum Brief in Support (appended to the Petition), Docket Entry No. 1, p. 23.

[16]Respondent's MSJ, Docket Entry No. 14, pp. 8-15.

§ 2254(d)(1). Together, Jackson and the AEDPA require a "double dose of deference that can rarely be surmounted." Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim. See Ylst v. Nunnemaker, 111 S. Ct. 2590, 2594 (1991); see also Wilson v. Sellers, 138 S. Ct. 1188, 1193-94 (2018). That judgment was issued by the intermediate state court of appeals, which set forth the elements of the offense and concluded that there was sufficient evidence to support Clark's conviction:

> Under the law applicable to appellant's case, a person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. See Tex. Pen. Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (West 2011). On appeal, appellant does not dispute that a person intentionally caused complainant's death during the course of committing or attempting to commit robbery. Rather, appellant's sole argument concerns identity; he contends the evidence is insufficient to establish he was the individual who committed the capital murder and raised merely a suspicion. We disagree.
>
> Appellant emphasizes that no eyewitness could provide more than a general description of the gunman or identify appellant. However, each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The following evidence collectively supported the jury's finding that appellant was the gunman: (1) the witnesses' general descriptions of the gunman matched appellant's characteristics; (2) the fact that the gunman waited ten minutes for the employees to walk to their car and immediately approached them raised a rationale inference the gunman knew the employees' habits in depositing money, and appellant

lived near the station; and (3) the DNA analysis presented astronomical odds that any African American other than appellant contributed the DNA on the stocking cap worn and then dropped by the gunman.

In this regard, appellant also challenges that such DNA analysis indicated appellant was the gunman. First, appellant asserts that DNA from more than one person was present on the stocking cap and appellant donated clothing the same year as the offense. Therefore, appellant suggests his DNA was on the stocking cap as its previous owner but some donee must have committed the murder. However, appellant misconstrues the testimony of the DNA analyst. The analyst explained that (1) for both samples from the skull cap, he detected a "single source profile" with an "additional minor ... allele," (2) the additional allele could be from another individual but could also be an elevated baseline, and the majority of the profile was from one individual, and (3) the additional allele was not a sufficient amount to show the DNA was a mixture from two individuals. Accordingly, there was no evidence establishing that DNA from more than one individual was present on the cap. The jury could have rationally inferred that the primary contributor to the DNA on an item such as a stocking cap which conforms completely to the head would be the person who had last worn the cap. Moreover, the jury was free to reject the testimony of appellant's brother, particularly because he failed to identify the stocking cap as an item allegedly donated by appellant.

Next, appellant argues that Washington could not identify the stocking cap recovered by the police and tested for DNA as the item that Washington saw the gunman drop and Washington's testimony was inconsistent on that subject. Washington originally testified he could not tell what sort of item the man dropped as he fled from the station. However, Washington did not waver in testifying the man dropped such item, Washington showed the police the exact spot where it was dropped, and the item recovered by the police was the stocking cap. Additionally, during the State's redirect examination of Washington, he listened, off the record, to the statement he gave the police after the incident. He then testified that such statement refreshed his memory that the item dropped was a stocking cap. We defer to the jury's implicit conclusion that Washington's change in testimony from being unable to identify the item to stating it was a stocking cap was not an inconsistency undermining his credibility but a

-11-

> matter of refreshing his memory. Consequently, the jury
> was free to believe that the DNA evidence proved
> appellant was the gunman who dropped the stocking cap
> while fleeing the shooting.
>
> In summary, because the evidence is sufficient to support
> the jury's verdict, we overrule appellant's sole issue
> and affirm the trial court's judgment.

Clark v. State, No. 14-15-00840-CR, 2016 WL 4254303, at *2-3 (Tex. App. — Houston [14th Dist.] Aug. 11, 2016, pet. ref'd) (footnote re-numbered from original). In reaching this conclusion the court of appeals followed the same legal standard articulated in Jackson for evaluating challenges to the sufficiency of the evidence. See id. at *2 (citing Gear v. State, 340 S.W.3d 743, 746 (Tex. Crim. 2011), which relies on the holding in Jackson).

As noted above, the state court found that there was "no evidence" that DNA from more than one individual was present on the stocking cap that was discarded by the perpetrator and that forensic testing established an overwhelming likelihood that the DNA came from Clark. Clark has not offered evidence to challenge any of the state court's findings of fact, which are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 101 S. Ct. 764, 769 (1981) (observing that the presumption of correctness "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"). Under these circumstances, the state court's well-reasoned opinion is entitled to "great weight" on federal habeas review. Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985)

(citing Jackson, 99 S. Ct. at 2791, n.15); see also Callins v. Collins, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.").

Although Clark speculates that additional DNA testing may identify someone else, he does not demonstrate that the DNA test results were deficient or that the proof presented at trial was insufficient to support the jury's verdict. To the extent that Clark asks this court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry exceeds the scope of review permitted under the Jackson standard. See Schlup v. Delo, 115 S. Ct. 851, 868 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."). A federal habeas corpus court may not substitute its view of the evidence for that of the fact-finder. See Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995). Under the Jackson standard "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Clark has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under Jackson. Therefore, Clark is not entitled to federal habeas corpus relief. Because Clark has failed to establish a

valid claim for relief, Respondent's Motion for Summary Judgment will be granted.

## IV. **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of

valid claim for relief, Respondent's Motion for Summary Judgment will be granted.

## IV. **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of

valid claim for relief, Respondent's Motion for Summary Judgment will be granted.

## IV. **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of

the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. Conclusion and Order

The court **ORDERS** as follows:

1. Respondent Lorie Davis's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.

2. Michael Jerome Clark's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 6th day of MARCH, 2019.

                                  SIM LAKE
                     UNITED STATES DISTRICT JUDGE